[No. A087632. First Dist., Div. Four. Apr. 26, 2000.]

ERIC E. BUGNA et al., Plaintiffs and Appellants, v.
RONALD D. FIKE, JR., et al., Defendants and Respondents.

**COUNSEL**

Morrison & Foerster, Portia R. Moore, Yolanda M. Sanders and Christine S. Neuhoff for Plaintiffs and Appellants.

Goodman & Herbert, Brian T. Chikowski and Mikel C. Deimler for Defendant and Respondent Ronald D. Fike, Jr.

Gold Bennett & Cera, Gold Bennett Cera & Sidener, Solomon B. Cera, and Gary Garrigues; Sankey & Luck and Thomas W. Sankey for Defendants and Respondents John Finlay, Healthcreative Company, FMA, Inc., Edward L. Schafman and Edward L. Schafman, L.C.

Hinshaw & Culbertson, Ronald E. Mallen, David I. Dalby and Paul E. Vallone for Defendants and Respondents David S. Piper and Kochman & Piper, P.C.

**OPINION**

**REARDON, J.**—This is an appeal from an order granting defendants' motion to stay the action on grounds of inconvenient forum. We affirm.

## I. BACKGROUND

### A. *The Parties*

Appellants are Drs. Eric E. Bugna, John C. Kofoed, Santi Rao and David L. Guzman; The Specialists Orthopedic Medical Corporation (SOMC), a small medical clinic through which the doctors operate their orthopedic practice; and The Specialists Surgery Center (SSC), an ambulatory surgery center in which three of the doctors are partners. Respondents are Ronald D. Fike, Jr., appellants' former office administrator and longtime business partner; John Finlay, a healthcare consultant residing in Texas; David S. Piper, a Texas attorney; and Edward L. Schafman, a Texas accountant.[1]

### B. *The Service Agreements*

What these parties have in common are two agreements[2] gone sour which appellants entered into with Specialty Care Network, Inc. (SCN), a physician management company incorporated in Delaware, with its principal place of business in Lakewood, Colorado. Under the agreements, SCN agreed to "manage" the doctors' practice in exchange for annual service fees defined as the greater of 35 percent of revenues, or a base service fee plus expenses associated with running the practice (e.g., employee salaries, office and equipment rental, insurance and utilities). The base service fees exceeded $1.1 million per year.

### C. *The Complaint*

In November 1998 appellants brought suit in Solano County against respondents, SCN and others for fraud and conspiracy, negligent misrepresentation, breach of fiduciary and other counts. The complaint alleged that Fike encouraged the doctors to contract with a physician management company, representing that such an arrangement would be profitable. Fike retained Finlay to procure a management company to purchase and manage the practice. They ultimately recommended SCN. Fike and Finlay brought

---

[1]We refer to Finlay, Piper and Schafman individually, but their companies are also respondents herein. They are, respectively: Healthcreative Company, FMA, Inc.; Kochman & Piper, P.C.; and Edward L. Schafman, L.C.

[2]Both were executed on November 14, 1997; one is with all the doctors and SOMC, the other is with SSC and Drs. Bugna, Kofoed and Rao.

Piper on board to represent appellants in negotiating the proposed SCN transaction. They also brought Schafman on board to provide accounting services in connection with the proposed contractual scheme.

The complaint further alleged that, with respect to the asset purchase and merger aspects of the transaction, SCN paid approximately $5.4 million in cash for the two companies and transferred approximately $2.9 million of unregistered and restricted SCN stock. Of that purchase price, Fike received $1,984,007 in cash; SCN received $300,000 back "without any explanation"; Finlay's company received $155,000 in fees and Piper's firm received $37,000 in fees. On the other hand, none of the doctors received anything from the SOMC merger because the corporation's alleged debts and liabilities exceeded the amount of cash that SCN paid under the merger agreement. And, for example, in connection with the asset purchase of SSC, Dr. Bugna received only $80,369.64 in cash, Dr. Kofoed $123,712.84.

### D. *The Forum Selection Issue*

Each agreement contains a "Governing Law Venue" clause, which provides as follows: "The validity, interpretation and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of California. In the event that SCN brings suit against [appellants] for an action arising out of this Agreement, then SCN agrees to bring the action in a court of proper jurisdiction sitting in Solano County, California. In the event that [appellants] bring suit against SCN for an action arising out of this Agreement, then [appellants] agree to bring the action in a court of proper jurisdiction sitting in Jefferson County, Colorado. Each party also agrees not to bring any action or proceeding arising out of or relating to this Agreement in any other court. Each of the parties waives any defense of inconvenient forum to the maintenance of any action or proceeding so brought . . . ."

Appellants brought suit in Solano County, California, not Jefferson County, Colorado. SCN moved to dismiss or stay the Solano County action. Finlay and Schafman filed a separate motion to dismiss or stay.[3] The court granted the motions to stay as to all parties to the action, finding that the nonsignatory parties—namely Finlay, Schafman and Piper—were "closely related to the agreements"; the forum selection clause was valid as to all parties; and appellants must bring any and all actions "against the defendants arising out of the agreements" in Jefferson County, Colorado. Appellants have not challenged the order as to SCN; their appeal proceeds solely as to Fike, Finlay, Schafman and Piper and their related companies.

---

[3]Piper moved to compel arbitration based on his written engagement letter with appellants; the court did not rule on this motion.

## II. Discussion

■ Appellants contend the trial court erred in applying the forum selection clause (1) in favor of Finlay, Piper and Schafman, because they were not signatories to the agreements and they were appellants' fiduciaries in negotiating the contracts; (2) in favor of Fike, because although he was a signator to the agreements, he also was their fiduciary and the parties intended that the reciprocal forum clause would apply solely to SCN and appellants. The issue, at root, is one of standing to assert the forum selection clause. Since the facts are not in dispute, the question is one of law subject to our independent review.

*Lu v. Dryclean-U.S.A. of California, Inc.* (1992) 11 Cal.App.4th 1490 [14 Cal.Rptr.2d 906] is helpful. There, the plaintiffs argued that enforcement of a forum selection clause would be unreasonable because two of the defendants—the corporate parent and grandparent of the franchiser-signator to the agreement—did not sign the agreement containing the forum selection clause. The reviewing court was not persuaded: " ' "[A] range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." [Citations.]' [Citation.] Here, the alleged conduct of [the corporate parent and grandparent] is closely related to the contractual relationship. They are alleged to have participated in the fraudulent representations which induced plaintiffs to enter into the Agreement. Indeed, plaintiffs go so far as to allege [the corporate parent and grandparent] are the 'alter ego' of Dryclean California, which did sign the Agreement containing the forum selection clause. Under these circumstances, the fact that [they] did not sign the Agreement does not render the forum selection clause unenforceable. [Citations.] To hold otherwise would be to permit a plaintiff to sidestep a valid forum selection clause simply by naming a closely related party who did not sign the clause as a defendant." (*Id.* at p. 1494, fn. omitted.)

Except for Fike, respondents are not signatories to the agreements and so we look to the "closely related" issue raised in *Lu* to determine standing. ■ Fleshing out this concept, the court in *Bancomer, S. A. v. Superior Court* (1996) 44 Cal.App.4th 1450, 1461 [52 Cal.Rptr.2d 435] explains: "For [defendant] to demonstrate that it was 'so closely related to the contractual relationship' that it is entitled to enforce the forum selection clause, it must show by specific conduct or express agreement that (1) it agreed to be bound by the terms of the purchase agreement, (2) the contracting parties intended [defendant] to benefit from the purchase agreement, or (3) there was sufficient evidence of a defined and intertwining business relationship with a contracting party."

 Distinguishing *Lu*, appellants contend that because respondents started out on their side of the table—as their fiduciaries in negotiating and putting together the deal—they "simply cannot be allowed to use the forum selection provision as a sword against their former clients by attempting to force the Doctors to sue them in Colorado." To back up this proposition, they refer us to *Baker v. LeBoeuf, Lamb, Leiby & Macrae* (6th Cir. 1997) 105 F.3d 1102 (*Baker*).

The *Baker* plaintiffs were underwriting members of Lloyd's of London (Lloyd's), an English insurance underwriting syndicate. The plaintiffs had entered into a "General Undertaking" agreement with the syndicate, agreeing, among other things, that the courts of England would have exclusive jurisdiction over any dispute arising out of their membership or business with Lloyd's. Defendant LeBoeuf, Lamb, Leiby & Macrae (LeBoeuf) served as United States counsel for Lloyd's. The syndicate advised the plaintiffs to contact the LeBoeuf firm concerning United States tax matters and other questions about Lloyd's, and required that they sign a limited power of attorney to the firm. (*Baker, supra*, 105 F.3d at pp. 1103-1104.)

The plaintiffs ended up suing LeBoeuf in Ohio with regard to counsel's exercise of the power of attorney in negotiations with the IRS. Their complaint alleged causes of action for fraud, breach of fiduciary duty, and negligent representation/legal malpractice. Invoking the forum selection clause in the Lloyd's undertaking agreement, LeBoeuf moved to dismiss for improper venue. The district court denied the motion, noting that (1) the defendants failed to establish that they were third party beneficiaries of the undertaking with Lloyd's; (2) the plaintiffs raised no claims against the syndicate, and thus the claims against the defendants were not integrally or closely related to any claims against or dispute with Lloyd's; (3) the " 'web of agreements' " (*Baker, supra*, 105 F.3d at p. 1106) between the plaintiffs and the syndicate demonstrated no "close connection" between LeBoeuf and Lloyd's sufficient to allow LeBoeuf to enforce the forum selection clause in this action; and (4) the plaintiffs did " 'not assert that the acts of malpractice were committed by defendants as agents of Lloyd's. Rather, they allege[ed] defendants committed these acts as plaintiffs' agents . . . .' " (*Ibid.*) On appeal the reviewing court agreed with, and essentially adopted, the lower court's ruling. (*Ibid.*)

This opinion has something for everyone. It is true, as appellants argue, that *Baker* distinguishes the LeBoeuf defendants from closely related defendants in other cases who benefited from a forum selection clause on grounds that the LeBoeuf defendants acted as the plaintiffs' agent—not as agent for the third party signatory to the contract. However this is but one of

several justifications offered. As important was the court's reasoning that the defendants were not closely related to the contractual relationship with Lloyd's or to any underlying dispute with Lloyd's pursuant to the undertaking agreements.

The key to the closely related test is whether the nonsignatories were close to the contractual relationship, not whether they were close to the third party signator. This makes sense because the forum selection clause is part of the underlying contract, and it is the contractual relationship gone awry that presumably spawns litigation and activates the clause. Giving standing to all closely related entities honors general principles of judicial economy by making all parties closely allied to the contractual relationship accountable in the same forum, thereby abating a proliferation of actions and inconsistent rulings. (See *Ford Motor Co. v. Insurance Co. of North America* (1995) 35 Cal.App.4th 604, 614 [41 Cal.Rptr.2d 342] [summarizing judicial administration concerns pertinent to forum non conveniens cases].)

Moreover, unlike the situation in *Baker*, here there is no question but that respondents were closely related to the contractual relationship between SCN and appellants. Indeed, they were key transaction participants—the deal makers who negotiated, evaluated and otherwise put together the very SCN transactions that appellants now attack. And unlike *Baker*, here appellants sued SCN and one of its officers. Further, the heart of the complaint is that SCN and its officer *conspired with* respondents "to create a fraudulent scheme under the pretense of an arm's length negotiation that would allow [respondents] to profit from the purchase price for TSSC and TSMC and would require the Doctors to compensate SCN with unconscionable 'service fees' for the forty-year term of the service agreements." Hence, according to appellants, respondents crossed over to the other side of the table and in effect became agents for SCN. They thus shared a defined and intertwining relationship both with appellants and also allegedly—but unbeknownst to appellants—with SCN.

Appellants maintain nonetheless that if we deem respondents to be closely related parties, then we would be creating an illogical situation fraught with an irreconcilable conflict of interest. They argue that if we let respondents enforce the forum selection clause, then we are pitting agent-fiduciary against the client-principal. "A party cannot be in a fiduciary relationship acting for the benefit of another party and at the same time be in an arm's-length negotiation with that party," they say. This is so, appellants urge, because in California a forum selection clause is only valid if the underlying contract is entered into freely and voluntarily by parties who have negotiated at arm's length. (*Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 495-496 [131 Cal.Rptr. 374, 551 P.2d 1206].)

We are not pitting anyone against appellants. It is appellants who have elected to sue respondents, alleging that they conspired with SCN to commit fraud against them. While respondents did negotiate the terms of the agreement on appellants' behalf, no one can suggest that at the time, respondents specifically drafted the forum selection clause so they could use it as a sword against appellants! Only through the passage of time has this occurred.

In any event, appellants' concern does not take them very far. The forum selection clause is reciprocal. SCN has apparently sued appellants in California, and appellants have brought cross-complaints against SCN. Had they also cross-complained against respondents, surely they would seek to cast respondents as closely related to the transaction such that they were brought within the purview of the clause.

For all these reasons, we affirm the order staying proceedings in Solano County as to all parties.

Hanlon, P. J., and Sepulveda, J., concurred.