Filed 4/15/14  Hermes Beteilgungsverwaltungs GmbH v. Siemens Shared Services CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| HERMES BETEILIGUNGSVERWALTUNGS GmbH,<br><br>　　Plaintiff and Appellant,<br><br>v.<br><br>SIEMENS SHARED SERVICES, LLC, et al.,<br><br>　　Defendants and Respondents. | B241673<br><br>(Los Angeles County<br>Super. Ct. No. BC420322) |

　　APPEAL from an order of the Superior Court of Los Angeles County, Daniel J. Buckley, Judge.  Affirmed.

　　The Ball Law Firm, Byron T. Ball; Esner, Chang & Boyer, Stuart B. Esner and Holly N. Boyer for Plaintiff and Appellant.

　　Reed Smith, Margaret M. Grignon, Stuart A. Shanus, Francisca M. Mok and Kasey J. Curtis for Defendants and Respondents.

————————————

INTRODUCTION

Plaintiff, Hermes Beteiligungsverwaltungs GmbH, as assignee of the claims of Financial Soft Computing (FSC), brought this action against Siemens AG Osterreich (Siemens AG) and its affiliate in California, Siemens Shared Services, LLC (Siemens Shared Services), alleging defendants breached an agreement between FSC and Siemens AG. Defendants successfully moved to stay the action on the basis of a clause in the subject agreement designating Vienna, Austria as the forum for disputes arising thereunder. Plaintiff appeals. We conclude the trial court did not abuse its discretion in ruling that the forum selection clause was enforceable and staying the California action pending successful transfer of the case to Vienna, Austria. Accordingly, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

1. *The Agreement at issue*

Siemens AG is an Austrian company. While employees at Siemens AG, Austrians Martin Kuehrer and Gerhard Lehner developed a software program called "Fin4cast" to analyze historical fluctuations in financial markets and predict future market movement. Kuehrer and Lehner formed FSC, also an Austrian company, in 1999 to market the Fin4cast software to hedge funds and money managers.

FSC entered into the subject written agreement with Siemens AG in March 2001 (the Agreement) under which Siemens AG would sell its rights in the Fin4cast software to FSC in exchange for cash, and the two companies would work together to license the software to potential customers. FSC would be responsible for marketing the software to customers who would then license it from Siemens AG.

Executed in Austria and written in German, the Agreement contains the following choice of law and forum selection clauses, as set forth in the certified translation: "This Agreement *shall* be governed by and construed in accordance with Austrian law. [¶] . . . All disputes arising from this Agreement *shall be referred to the court in Vienna having subject-matter jurisdiction*." (Italics added.)

2

At some point after executing the Agreement, Siemens AG arranged for defendant Siemens Shared Services, a company with offices in San Jose, California, to function as the contracting party for customers FSC developed in the United States.

2. *FSC files for bankruptcy protection and sells its claims against defendants to plaintiff.*

FSC filed for bankruptcy protection in Austria in June 2008. In an effort "to maximize the potential recovery on behalf of FSC's creditors," the administrator of FSC's bankruptcy estate, Michael Wagner, determined that FSC's creditors' claims would best be advanced in the United States. Wagner explained he conducted extensive research and concluded that the " 'overwhelming majority of FSC's marketing and sales efforts were focused upon hedge funds and money managers located in the United States of America, efforts which resulted in FSC's key customers or their agents being located in the United States.' " As the testimony of these customers was necessary, FSC's claims would best be brought in the United States, Wagner declared. Furthermore, Wagner determined that Siemens Shared Services, who has an office in California, would be a necessary party to an action brought on behalf of FSC because Siemens Shared Services had been designated by Siemens AG to handle all of the Fin4cast contract executions, billing, and collection. However, according to Wagner, there was no "viable manner" by which to invoke the jurisdiction of the Austrian courts over Siemens Shared Services, and so Wagner recommended to the Austrian Bankruptcy Court that FSC's claims against defendants be assigned to plaintiff, an Austrian company authorized to conduct business in California. The Austrian Bankruptcy Court located in Eisenstadt, Province of Burgenland, Austria accepted and approved Wagner's recommendation.

In 2009, Wagner, as administrator of the bankruptcy estate, entered into a written contract assigning to plaintiff all of FSC's claims against Siemens AG, Siemens Shared Services, and all other eligible companies of the Siemens Group of companies. In return for the assignment, plaintiff paid FSC's bankruptcy estate €100 plus 10 percent of any recovery that plaintiff obtained against defendants. The Austrian Bankruptcy Court

3

approved the assignment, without specifying in what forum plaintiff could assert FSC's claims against defendants.

3. *The instant lawsuit and the motions to dismiss or stay the action*

Plaintiff immediately filed the instant action against Siemens AG and Siemens Shared Services, among others, asserting causes of action for breach of the Agreement, promissory fraud, and intentional interference with prospective economic advantage. The complaint alleged that Siemens AG arranged for Siemens Shared Services to function as the contracting party with customers that FSC developed in the United States pursuant to the Agreement. Siemens Shared Services was allegedly "a wholly owned subsidiary of" and an alter ego of Siemens AG, and defendants have a close relationship. The complaint alleged that together, defendants breached the Agreement by failing to contract with certain business prospects that FSC had developed in the United States.

Siemens Shared Services moved to dismiss or stay the action on the ground the lawsuit should proceed in Austria pursuant to the forum selection clause in the Agreement between Siemens AG and FSC. Siemens Shared Services reasoned (1) plaintiff's claims arise out of a contract that designates Vienna, Austria as the exclusive forum for litigation, and (2) California is an inconvenient forum, with the result the case would be more conveniently tried in Vienna, Austria. Siemens Shared Services argued it had standing to enforce the forum selection clause, notwithstanding it was not a party to the Agreement, because its conduct was closely related to the contractual relationship. It argued that the forum selection clause was presumptively valid and plaintiff made no allegation that the Vienna, Austria forum was unfair or unreasonable.

Plaintiff opposed the motion on four grounds. First, plaintiff challenged Siemens Shared Services' standing to invoke the forum selection clause in the Agreement as it was neither a signatory to that Agreement nor a closely related third party. Administrator Wagner explained that the assignment of Siemens AG's interests under the Agreement to Siemens Shared Services was oral and hence designated no forum. Thus, Siemens AG could challenge any claim brought in an Austrian court by asserting Siemens Shared Services in California was the party responsible.

4

Second, plaintiff argued the Austrian Bankruptcy Court has already determined that plaintiff's claims would best be advanced in California. Administrator Wagner declared that under Austrian law, a claim for damages must be bought in the jurisdiction where the tort was committed and damages actually occurred. As Siemens Shared Services did not conduct any business in Austria, the claim would have to be brought in California. FSC's Creditor's Committee agreed with Wagner that FSC's claims against Siemens AG should be brought in California and approved of the assignment. Bankruptcy Magistrate Scheidl declared that she was the judge overseeing FSC's bankruptcy and "was involved in the decision-making process" concerning the assignment. The Magistrate explained that "during the said decision-making process . . . all measures that had to be taken and any and all potential opponents were taken into account and the conclusion was drawn that claims vis-à-vis [Siemens Shared Services] would have to be asserted in the U.SA., *if necessary*." (Italics added.) Kuehrer declared that "FSC's claims against Defendants in this action have already been referred to and evaluated by the Austrian Courts, and the assignment of such claims to [plaintiff] reflects such Courts' determination that the claims are properly before, and should be prosecuted in, this Court [in California]."

The third basis for plaintiff's opposition was the argument that Siemens AG, as a creditor of FSC's bankruptcy estate, was bound by the Austrian Bankruptcy Court's approval of the assignment to plaintiff, which approval estopped Siemens AG from invoking the forum selection clause.

Finally, plaintiff argued that its claims are now time-barred under Austrian law and so it would be unreasonable and unfair to require litigation in Austria. Administrator Wagner explained that the statute of limitations defense can be waived by Siemens AG but only during a case pending before an Austrian Court. Yet, Wagner explained that "[a]t no point to this date in this case has [Siemens AG] ever tolled any statute of limitations with respect to claims against it before an Austrian court."

In its motion to dismiss or stay the action raising the same arguments as Siemens Shared Services, Siemens AG rejected plaintiff's claim that the statute of limitations had

5

run in Austria and *offered*, as a condition to the granting of defendants' motions, *to toll the statute of limitations for the period since the action was filed*, which tolling Austrian law allows. Siemens AG also rejected plaintiff's argument that the Austrian Bankruptcy Court had adjudicated the forum selection clause, arguing that under Austrian bankruptcy law, approval of the assignment was simply that and had no other adjudicatory import.

In his declaration in support of defendant's motion, attorney Dr. Georg Schima, an expert on Austrian law, provided a brief overview of the Austrian legal system and explained that the choice of forum provision in commercial contracts are enforceable under Austrian law. Citing section 1502 ABGB,[1] Schima also described how the statute of limitations is a defense that can be waived, even when the limitations period has already run. Finally, Schima explained, and attorney Dr. Eberhard Wallentin reiterated in his separate declaration, that a bankruptcy court's approval of an assignment of claims is not a "binding," determination about where the claims should be brought. Schima declared, "[i]t is not possible to derive from [the bankruptcy court's approval of the assignment] any conclusion that the Bankruptcy Court decided that this claim would better proceed in the USA."

4. *The trial court grants defendants' motion and stays the action.*

In granting defendants' motion, the court explained that this action arises out of the Agreement whose forum selection clause designated Austria as the proper venue. Although Siemens Shared Services was not a signatory to the Agreement, the court explained, plaintiff's complaint alleged that the two defendants shared a "close relationship" and so Siemens Shared Services was entitled to enforce the Agreement's forum selection clause. The court next ruled that enforcement of the clause would not be unfair or unreasonable and so plaintiff did not meet its burden in opposing defendants' motion. The court rejected plaintiff's argument that the Austrian Bankruptcy Court had

---

[1] Translated, section 1502 ABGB reads in relevant part, " 'The statute of limitations can't be renounced in advance.' " The general understanding of this provision, Schima explained "is that a waiver given after expiration of the limitations period is legally effective."

already determined that FSC's claims against defendants would have to be prosecuted in the United States. From the evidence submitted, the court found, it was not clear whether the bankruptcy court was empowered to make such a determination or whether such a determination would be binding on Austrian courts. The court also rejected Wagner's assertion that Siemens Shared Services would not be subject to Austrian jurisdiction. The trial court reasoned, if Siemens Shared Services enforces the forum selection clause, then that defendant has already agreed to consent to jurisdiction in Austria. With respect to plaintiff's statute of limitations argument, the court cited Austrian attorney Schima's declaration on defendants' behalf attesting that Austrian law allows a waiver of the statute of limitations and cited the relevant Austrian statutes. The court accepted defendants' representation that were the case transferred to Austria, they would toll the statute of limitations. The court granted defendants' motion to stay but retained jurisdiction over the action in case the Austrian court rejected the lawsuit.

Plaintiff timely appealed.

DISCUSSION

1. *The law of forum selection clauses*

Under California law, contractual forum selection clauses are valid and should be given effect unless enforcement would be unreasonable. (*Intershop Communications AG v. Superior Court* (2002) 104 Cal.App.4th 191, 196 (*Intershop Communications*).) A mandatory forum selection clause "will ordinarily be given effect without any analysis of convenience; the only question is whether enforcement of the clause would be unreasonable." (*Ibid.*)

"Given the significance attached to forum selection clauses, the courts have placed a substantial burden on a plaintiff seeking to defeat such a clause, requiring it to demonstrate enforcement of the clause would be unreasonable under the circumstances of the case. [Citation.] That is, that the forum selected would be unavailable or unable to accomplish substantial justice. [Citation.] Moreover, in determining reasonability, the choice of forum requirement must have some rational basis in light of the facts underlying the transaction. [Citations.] However, 'neither inconvenience nor additional

7

expense in litigating in the selected forum is part of the test of unreasonability.' [Citations.] Finally, a forum selection clause will not be enforced if to do so will bring about a result contrary to the public policy of the forum. [Citation.]" (*CQL Original Products, Inc. v. National Hockey League Players' Assn.* (1995) 39 Cal.App.4th 1347, 1354 (*CQL Original Products*).)

A trial court's decision to enforce a forum selection clause is reviewed for abuse of discretion. (See *Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 495; *Bancomer, S. A. v. Superior Court* (1996) 44 Cal.App.4th 1450, 1457; but see *Intershop Communications, supra,* 104 Cal.App.4th at pp. 198-199 [noting conflict in appellate courts about standard of review].) Accordingly, we will not disturb the exercise of a trial court's discretion absent a manifest abuse resulting in a miscarriage of justice. (*Bancomer, S. A. v. Superior Court,* at p. 1457.)

The Agreement here contains a mandatory forum selection clause. As defendants observe, the Agreement reads, "All disputes arising from this Agreement *shall* be referred to the court in Vienna having subject-matter jurisdiction." (Italics added.) Mandatory forum selections clauses use language such as " ' "*shall* be litigated," ' " " ' "*shall . . .* be prosecuted," ' " and " ' "*shall* have exclusive jurisdiction." ' " (*Intershop Communications*, *supra*, 104 Cal.App.4th at p. 197, italics added; see also *CQL Original Products, supra,* 39 Cal.App.4th at p. 1358 [mandatory character of clause reflected by use of the word "shall"].) As the forum selection clause in this Agreement is mandatory and designates Vienna, Austria as the proper venue, the burden fell to plaintiff to demonstrate why enforcement of that clause would be unreasonable. (*CQL Original Products, supra,* at p. 1354.)

2. *The forum selection clause has not been satisfied.*

Plaintiff first argues even if the forum selection clause is mandatory, the clause has been satisfied. Plaintiff reasons the dispute, i.e., plaintiff's claim against defendants, has already been referred to an Austrian court. Plaintiff notes that the clause at issue reads, "All disputes arising from this Agreement shall be *referred* to the court in Vienna having subject-matter jurisdiction" and argue that "referred" means to "send or direct for

8

treatment, aid, information, or decision," and not fully litigate. (Italics added.) Plaintiff argues that FSC's legal interest in a dispute between it and Siemens AG was "referred" to an Austrian court having subject matter jurisdiction, namely the Austrian Bankruptcy Court, and that that Austrian court determined that plaintiff's claims should be litigated in the United States. The essential problem with plaintiff's argument is that the forum selection clause requires that all disputes be referred to "the court *in Vienna* having subject-matter jurisdiction" (italics added), whereas the bankruptcy court is in *Eisenstadt, Province of Burgenland*. Therefore, plaintiff's contention is unavailing.

3. *Although a non-signatory to the Agreement, Siemens Shared Services may enforce the forum selection clause*.

Plaintiff contends that as Siemens Shared Services was not a signatory to the Agreement containing the forum selection clause, that company has no standing to enforce the clause.

However, according to California's forum selection law, " ' "[a] range of transaction participants, parties *and non-parties*, should benefit from and be subject to forum selection clauses." [Citations.]' [Citation.]" (*Lu v. Dryclean-U.S.A. of California, Inc*. (1992) 11 Cal.App.4th 1490, 1494, italics added (*Lu*).) The question is really "one of standing to assert the forum selection clause." (*Bugna v. Fike* (2000) 80 Cal.App.4th 229, 233 (*Bugna*).) " 'For [a defendant] to demonstrate that it was "so closely related to the contractual relationship" that it is entitled to enforce the forum selection clause, it must show by specific conduct or express agreement that (1) it agreed to be bound by the terms of the . . . agreement, (2) the contracting parties intended [defendant] to benefit from the . . . agreement, *or* (3) *there was sufficient evidence of a defined and intertwining business relationship with a contracting party*.' " (*Id.* at p. 233, italics added, quoting from *Bancomer, S. A. v. Superior Court, supra,* 44 Cal.App.4th at p. 1461.) "The key to the closely related test is whether the nonsignatories were close to the contractual relationship, not whether they were close to the third party signor. This makes sense because the forum selection clause is part of the underlying contract, and it is the contractual relationship gone awry that presumably spawns litigation and activates the

9

clause.  Giving standing to all closely related entities honors general principles of judicial economy by making all parties closely allied to the contractual relationship accountable in the same forum, thereby abating a proliferation of actions and inconsistent rulings. [Citation.]" (*Bugna*, *supra*, at p. 235.)  In *Lu*, the nonsignatory defendant had standing to enforce the forum selection clause because it was alleged to be the alter ego of the signing defendant and to have participated directly in the tortious behavior alleged in the complaint.  (*Lu, supra,* at p. 1494.)  In *Bugna*, the nonsignatory defendants were "key" participants in the transactions at issue in the lawsuit and so they could enforce the forum selection clause.  (*Bugna*, *supra*, at p. 235.)

Here, plaintiff has alleged Siemens Shared Services had a defined and intertwining business relationship with the contract at issue.  Plaintiff's complaint alleges that Siemens Shared Services was "a wholly owned subsidiary of" Siemens AG, the signing party, was designated by Siemens AG as the entity responsible for contracting with software customers, and was an "alter ego" of Siemens AG, a determinative fact supporting enforcement by a nonsignatory in *Lu*, *supra*, 11 Cal.App.4th at page 1494.  More important, Siemens Shared Services is alleged to have breached the Agreement.  (*Ibid*.) Apart from whether plaintiff is correct that under Austrian law, Siemens AG's assignment of its obligations to Siemens Shared Services was ineffectual, plaintiff has alleged that Siemens Shared Services engaged in the very conduct giving rise to the lawsuit.  (*Bugna*, *supra*, 80 Cal.App.4th at p. 235.)  Under the circumstances, the fact Siemens Shared Services did not sign the Agreement does not negate defendants' standing to enforce the forum selection clause.  " 'To hold otherwise would be to permit a plaintiff to sidestep a valid form selection clause simply by naming a closely related party who did not sign the clause as a defendant.' " (*Id*. at p. 233.)

As we conclude that Siemens Shared Services has standing to invoke the forum selection clause because it is the alter ego of Siemens AG, a party to the Agreement, and because it was alleged to have breached the very Agreement sued upon, we need not

10

address plaintiff's subsequent argument that Siemens Shared Services can only enforce the forum selection clause by reference to principles of equitable estoppel.[2]

4. *Siemens AG is not equitably estopped from enforcing the forum selection clause in its own Agreement*.

Plaintiff contends, as it did below, that *Siemens AG*, the Agreement's signatory, is equitably estopped from asserting the forum selection clause contained in the Agreement.[3] Plaintiff cites Administrator Wagner's observation that it did not appear "there was a viable manner in which to invoke the jurisdiction of the Austrian Courts over Siemens Shared Services." His conclusion appears to be based on his assessment that the oral assignment by Siemens AG to Siemens Shared Services did not refer to or include a choice of forum clause, and absent such a provision under section 41 JN of Austrian law, a claim for damages must be brought in the jurisdiction where the tort was committed and damages actually occurred. Plaintiff argues that *had* defendants voiced their intention to contest litigation in the United States and concede jurisdiction as to Siemens Shared Services in Austria, plaintiff "*may not* have purchased [FSC's claim]." (Italics added.) Siemens AG "sat silent during the bankruptcy proceeding when

---

[2]    Plaintiff also cites the doctrine of unclean hands to suggest that Siemens Shared Services was involved with Siemens AG to "cover up" the latter company's ties to the United States in an effort to enable Siemens AG to avoid litigation here. Such conduct, plaintiff argues, precludes Siemens Shared Services from invoking the forum selection clause. Yet, if Siemens AG had not entered into a relationship with Siemens Shared Services, Siemens AG would alone be responsible under the Agreement for the breaches alleged in the complaint, with the result those claims would certainly have to be asserted in Austria. The only reason plaintiff can argue it should be allowed to sue Siemens Shared Services in California is because it seeks to benefit from the connection between the two companies, the very conduct it asserts here is a cover up. We need not reach plaintiff's contention because we have already concluded Siemens Shared Services is entitled to invoke the clause under the law of forum selection, and it has agreed to submit to Austrian jurisdiction.

[3]    Defendants' contention to the contrary notwithstanding, plaintiff did argue to the trial court in its opposition papers that Siemens AG was equitably estopped to rely on the forum selection clause.

11

plaintiff . . . purchased the asset of the claims being presented in this litigation based on the understanding that the litigation would be pursued in the United States." For that reason, plaintiff argues, Siemens AG should be equitably estopped from enforcing the forum selection clause.

"The existence of an estoppel is largely a question of fact." (*Olofsson v. Mission Linen Supply* (2012) 211 Cal.App.4th 1236, 1245.) The party seeking to apply the doctrine of equitable estoppel must establish, among other elements, that he or she is "ignorant of the true state of facts and . . . rel[ied] *on the conduct* [*of the party to be estopped*] *to his or her injury.* [Citations.]" (*Ibid.*, italics added.)

There is no evidence that plaintiff relied on any action or inaction of *Siemens AG* in making its decision to purchase FSC's claims against defendants. Rather, the evidence shows, and plaintiff asserts in its appellate briefing, that plaintiff relied on *Administrator Wagner's representations and on the bankruptcy court's approval of the Assignment* when it purchased FSC's claims against defendants. Plaintiff states, "There is nothing in the record to demonstrate that *Plaintiff Hermes' reliance on the findings and conclusions of the Bankruptcy Court* were unreasonable." (Italics added.) As there is no showing plaintiff relied on Siemens AG's conduct, the doctrine of equitable estoppel does not apply to preclude application of the forum selection clause.

5. *The trial court was cognizant of plaintiff's concerns when it fashioned its ruling*.

Plaintiff argues that the extremely high fee required to file a lawsuit in Austria renders enforcement of the forum selection clause unreasonable. However, " 'Mere inconvenience or additional expense is not the test of unreasonableness since it may be assumed that [FSC] received under the contract consideration for these things.' " (*Smith, Valentino & Smith, Inc. v. Superior Court*, *supra*, 17 Cal.3d at p. 496, citing *The Bremen v. Zapata Off-Shore Co.* (1972) 407 U.S. 1, 16-18; accord, *CQL Original Products, supra,* 39 Cal.App.4th at p. 1354.)

12

Next, citing sections 41 JN, 104 JN, and Austrian Code of Civil Procedure section 230,[4] plaintiff argues that enforcement of the forum selection clause is unreasonable because Austria has no jurisdiction over Siemens Shared Services and so any complaint filed there would be dismissed at the outset by the Austrian court. Plaintiff worries that while defendants concede jurisdiction must be in writing to be enforceable in Austria (§ 104 JN) and agreed to submit to jurisdiction in Austria, they "never made any representations in the Bankruptcy Court, nor any other Austrian court, that [Siemens Shared Services] would in fact consent to jurisdiction in Austria," nor has it done so in writing. Plaintiff also observes that although defendants may waive the statute of limitations, they have not submitted a written waiver as required under Austrian law.

However, as our Supreme Court explained, "[u]ncertainties such as this concerning the suitability of the foreign forum have prompted our holding that a court cannot dismiss a suit by a true California plaintiff, but can stay that suit: the staying court can resume proceedings if the foreign forum proves unsuitable. . . . [I]f redress in the foreign jurisdiction proves abortive, California courts retain the option to resume proceedings." (*Archibald v. Cinerama Hotels* (1976) 15 Cal.3d 853, 862.) These very concerns of plaintiff are exactly what prompted the trial court here to stay this action rather than to dismiss it. The court explained it was issuing its order to stay the action to "supervise what may or might transpire before the Austrian courts." Continuing, the

---

**4**      According to the official translation, section 41 JN reads, "As soon as a lawsuit of contentious or non-contentious jurisdiction is pending before a court, the court must review its jurisdiction *ex offico.*"

     Section 104 JN as translated reads in part that the parties can "by express agreement, subject themselves to: [¶] 1. domestic jurisdiction; [¶] 2. one or more trial courts of specifically listed places. [¶] The agreement must be verified by documentary evidence; no other requirement must be met."

     The translation of section 230 of the Austrian Code of Civil Procedure reads in part, "If the presiding judge is of the opinion that the claim is not admissible for lack of international jurisdiction or for lack of subject-matter or local jurisdiction . . . he shall obtain a decision from the panel of judges on whether an order to reply to the statement of claims . . . is to be issued or whether the statement of claims is to be returned for improvement or to be rejected."

13

court stated to plaintiff: "[y]ou also have the bankruptcy matter and you have this issue of the statute of limitations, and there's one more that I think you had in your papers . . . . [¶] There's definitely an intent not to dismiss this case, to stay it, and if somehow you get kicked out or don't get in to the courts [in Austria], *you have a home here*. So that's definitely why it's [*sic*] a stay and not a dismissal." (Italics added.)[5] The court also noted, as Siemens Shared Services has successfully enforced the forum selection clause, that it has *consented to jurisdiction in Austria*. The court also *accepted defendants' representation* that were the case transferred to Austria, they would toll the statute of limitations. Therefore, plaintiff has not demonstrated that the trial court abused its discretion in granting defendants' motion and staying the action pending successful transfer of this case to Vienna, Austria.

---

[5] Finally, plaintiff argues that the forum selection clause is actually a choice of venue provision, which provision is unenforceable under California law. Plaintiff has provided no Austrian law to demonstrate that the forum selection clause is actually a venue selection clause or whether, as such, it would be enforceable in Austria.

14

DISPOSITION

The order is affirmed.  Each party to bear its own costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**




ALDRICH, J.



We concur:




KLEIN, P. J.




CROSKEY, J.



15