Filed 2/3/26  Loskot v. Grishin CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| ALEXEY LOSKOT, | |
| Plaintiff and Appellant, | G064743 |
| v. | (Super. Ct. No. 30-2023-01354211) |
| YEVGENIY GRISHIN et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from an order of the Superior Court of Orange County, Michael J. Strickroth, Judge. Affirmed.

Donohoo Rhine, Rodney L. Donohoo and Kevin T. Rhine for Plaintiff and Appellant.

Law Offices of Andrew A. Smits and Andrew A. Smits for Defendants and Respondents.

\*          \*          \*

Plaintiff Alexey Loskot appeals an order granting motions by defendants Yevgeniy Grishin and James Evenson to stay his lawsuit against them for fraud based on a forum selection clause in an operating agreement to which Loskot and Evenson—but not Grishin—are signatories. The forum selection clause designates federal or state courts in Florida as the forum for any litigation "arising from or relating to" the operating agreement.

Loskot argues the trial court erred by granting the motions to stay because the forum selection clause is unenforceable as against California public policy; specifically, Loskot points to the contract's predispute jury trial waiver. The California Supreme Court recently ruled that a predispute jury trial waiver alone does not invalidate a forum selection clause. (*EpicentRx, Inc. v. Superior Court* (2025) 18 Cal.5th 58, 73 (*EpicentRx*).) *EpicentRx* renders this argument moot. Loskot's remaining arguments against enforcement of the forum selection clause lack merit. We therefore affirm the trial court's order granting Grishin's and Evenson's motions.

STATEMENT OF FACTS[1]

Loskot and Grishin are both immigrants from Kazakhstan who currently reside in California. They met in 2019.

In early 2020, Grishin told Loskot he was in the business of purchasing American mining equipment and reselling it in Kazakhstan and was seeking a $1 million investment in his company. Loskot responded that he did not have $1 million to invest. In August or September, Grishin stated he owned a newly formed company, Minecon LLC, and again spoke with

---

[1] This section is derived from the allegations in plaintiff's operative complaint as well as the evidence offered in support of defendants' motions to stay or dismiss.

Loskot regarding investing. Grishin claimed he had an agreement with a Florida manufacturer, Costex Tractor Parts (CTP), to sell CTP's mining equipment parts in Kazakhstan.

The parties eventually agreed that Loskot could invest the smaller sum of $400,000 in exchange for a 45 percent ownership interest in Minecon LLC. Grishin would take a 55 percent interest in Minecon LLC and give Minecon LLC the rights to the CTP distribution agreement, using Grishin's own expertise in the field to conduct the company's business. If Loskot agreed to the terms of the CTP distribution agreement, Minecon LLC would then become a party to it.

Before the two men reduced this arrangement to writing, however, Grishin told Loskot for the first time that his friend James Evenson—not Grishin—would be the majority shareholder in Minecon LLC. Grishin explained that Evenson would handle all of the paperwork and filings for Minecon LLC, and Grishin would instead be Minecon LLC's managing director.

When Loskot received a copy of the CTP distribution agreement, he noticed Minecon LLC was not identified as a party. Instead, the distribution agreement listed APG LLC USA (APG) "'in partnership with MineCon Kazakhstan LLP'" (Minecon KZ). These two entities were unknown to Loskot. When Loskot asked Grishin about this, he said APG was a company owned by Grishin and Evenson. Grishin promised he would ensure the CTP distribution agreement was modified to show Minecon LLC as the owner of the distribution rights.

After several more meetings and a tour of CTP's factory in Miami, Florida, Loskot sent $200,000 to Evenson in January 2021, and the remaining $200,000 in March 2021. Loskot sent Evenson another $10,000 in

3

September 2021, based on Grishin's urgent request, even though Loskot was not completely sure why the additional money was needed.

In February 2022, Loskot began asking Grishin to provide him with Minecon LLC's financial statements. Grishin only provided an Excel spreadsheet with numbers typed in from Minecon KZ, which Grishin represented as the Kazakhstan affiliate company of Minecon LLC.[2]

In October 2022, Loskot, Grishin, and Evenson went to a local CitiBank branch to open a bank account for Minecon LLC. To Loskot's surprise, however, Grishin and Evenson proceeded to open accounts for APG, not for Minecon LLC. Loskot again asked Grishin for Minecon LLC's financial information. Grishin promised to deliver the information, but he did not follow through.

In 2023, Loskot became persistent, repeatedly asking for the financial information, but Grishin would either be evasive or would promise to provide the information later; Grishin, however, failed to deliver the requested information to Loskot.

Loskot's frustration eventually resulted in the three men having an argument at a mining trade event in Las Vegas in March 2023. Loskot was upset that Grishin and Evenson had failed to provide him with financial information for Minecon LLC or Minecon KZ. Evenson responded that Loskot "did not need any financial information." Loskot then asked to see the CTP distribution agreement to ensure Minecon LLC was listed as a party. Grishin

---

[2] The limited record before us does not make clear whether this means Minecon KZ typed the numbers into a spreadsheet, or whether someone had typed Minecon KZ's financial information into the spreadsheet instead of Minecon LLC's financial information.

told Loskot he had kept APG as a party to the agreement; Grishin refused to remove APG or, presumably, add Minecon LLC as a party.

In May 2023, Loskot demanded Grishin return Loskot's $400,000 investment, but Grishin did not respond to the messages. Loskot also texted Evenson with the same demand and heard nothing. Evenson and Grishin did not respond substantively to any of Loskot's requests.

In the summer of 2023, Loskot discovered that Minecon KZ was comprised of several entities owned and controlled by APG. Minecon LLC had no stake in any of the entities.

PROCEDURAL HISTORY

In October 2023, Loskot filed a complaint in the Orange County Superior Court for fraud and related causes of action against Grishin, Evenson, and APG. Grishin and Evenson individually filed motions to dismiss, or alternatively, stay the action pursuant to Code of Civil Procedure section 410.30[3] based on a forum selection clause contained in the operating agreement for Minecon LLC, which had been signed by Evenson and Loskot. Evenson attached the operating agreement to his declaration in support of his motion to dismiss or stay. He also filed a declaration in support of Grishin's motion to dismiss, which likewise attached the operating agreement. The operating agreement had not been specifically mentioned in the complaint.

---

[3] Code of Civil Procedure section 410.30, subdivision (a) states: "When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just." A motion made under Code of Civil Procedure section 410.30 "is a proper vehicle for enforcing a forum selection clause." (*Grove v. Juul Labs, Inc.* (2022) 77 Cal.App.5th 1081, 1090.)

5

The operating agreement states that Minecon LLC is a Florida limited liability company with its principal place of business in Hillsboro, Oregon. The operating agreement contains the following forum selection clause:

"Section 13.13 Submission to Jurisdiction. Each party irrevocably and unconditionally agrees that it will not commence any action, litigation or proceeding of any kind whatsoever against any other party in any way arising from or relating to this Agreement, including all Exhibits and Schedules hereto, and all matters arising out of or relating to this Agreement, including, but not limited to, contract, equity, tort, fraud and statutory claims, in any forum other than the US District Court for the Southern District of Florida or, if such court does not have subject matter jurisdiction, the courts of the State of Florida sitting in Miami-Dade County, and any appellate court from any thereof [*sic*]. Each party irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and agrees to bring any such action, litigation or proceeding only in the US District Court for the Southern District of Florida or, if such court does not have subject matter jurisdiction, the courts of the State of Florida sitting in Miami-Dade County." (Boldface omitted.)

The trial court granted Grishin's and Evenson's motions to stay.

DISCUSSION

I.

APPLICABLE LAW

"No satisfying reason of public policy has been suggested why enforcement should be denied a forum selection clause appearing in a contract entered into freely and voluntarily by parties who have negotiated at arm's length." (*Smith, Valentino & Smith, Inc. v. Superior Court (Smith)*

6

(1976) 17 Cal.3d 491, 495–496.) "While still a matter of trial court discretion under the doctrine of forum non conveniens, 'forum selection clauses are valid and may be given effect, in the court's discretion and in the absence of a showing that enforcement of such a clause would be unreasonable.' [*Smith, supra,* 17 Cal.3d at p. 496].)" (*EpicentRx, supra,* 18 Cal.5th at p. 73.) We thus review the trial court's ruling on defendants' motions for abuse of discretion "in light of [plaintiff's] burden to show that enforcement of the clause would be unreasonable." (*Bancomer, S.A. v. Superior Court* (1996) 44 Cal.App.4th 1450, 1457 (*Bancomer*).)

## II.

### THE FORUM SELECTION CLAUSE IS NOT UNENFORCEABLE JUST BECAUSE IT CONTAINS A PREDISPUTE JURY WAIVER

Loskot's main argument on appeal is that the forum selection clause is unenforceable as against California public policy because it contains a predispute jury trial waiver. Specifically, section 13.14 of the operating agreement states as follows in all capital letters and boldface type: "Each party irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal action, proceeding, cause of action or counterclaim arising out of or relating to this agreement, including any exhibits and schedules attached to this agreement, or the transactions contemplated hereby."

In his brief, Loskot cited *Handoush v. Lease Finance Group, LLC* (2019) 41 Cal.App.5th 729, 732 (*Handoush*) and *The Comedy Store v. Moss Adams LLP* (Nov. 14, 2024, B327404) review granted February 11, 2025, opinion ordered depublished September 3, 2025, S288469 (*The Comedy Store*) to support his argument. Both cases held that a litigant seeking to enforce a forum selection clause in a contract also containing a predispute jury trial

waiver must make an additional showing that the right to jury trial would be preserved in the out-of-state forum.[4] (See *Handoush*, *supra*, 41 Cal.App.5th at p. 734; *The Comedy Store*, *supra*, B327404.) Because Loskot contends Florida law does not prohibit contractual predispute jury trial waivers, he concludes the trial court should not have enforced the forum selection clause. The cases he cites for this contention (*Vista Centre v. Unlike Anything, Inc.* (Fla.Ct.App. 1992) 603 So.2d 576; *Jones v. Bank of America, N.A.* (M.D.Fla. July 27, 2012, No. 8:12-cv-419-T-33TGW) 2012 U.S.Dist. Lexis 104793) are not on point.

During the pendency of this appeal, the California Supreme Court rejected this same argument in *EpicentRx*, *supra*, 18 Cal.5th at page 67, and disapproved *Handoush* and *The Comedy Store*.[5] (*EpicentRx*, *supra*, 18 Cal.5th at p. 84, fn. 7.) The Supreme Court held: "A forum selection clause is not unenforceable simply because it requires the parties to litigate in a jurisdiction that does not afford civil litigants the same right to trial by jury as litigants in California courts enjoy." (*Id.* at p. 67.) *EpicentRx* disposes of Loskot's argument, and we are bound to follow it. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

---

[4] Under California law, predispute contractual waivers of the right to jury trial are unenforceable as against public policy because the right to jury trial is only waivable as provided by statute. (See *Grafton Partners v. Superior Court* (2005) 36 Cal.4th 944, 956.)

[5] Before depublishing *The Comedy Store, supra*, B327404, *EpicentRX* disapproved it "to the extent it is inconsistent with" *EpicentRX*. (*EpicentRX*, *supra*, 18 Cal.5th at p. 84, fn. 7.)

## III.

### GRISHIN MAY ENFORCE THE FORUM SELECTION CLAUSE EVEN THOUGH HE IS NOT A SIGNATORY TO THE OPERATING AGREEMENT

Because Grishin did not sign the operating agreement, Loskot argues Grishin lacks standing to enforce the forum selection clause, relying on *Bancomer*, *supra*, 44 Cal.App.4th at pages 1458–1461, and *Bugna v. Fike* (2000) 80 Cal.App.4th 229, 233 (*Bugna*). Loskot contends the trial court erred by finding Grishin is a person "closely related to the contractual relationship," who may enforce the forum selection clause as discussed in *Lu v. Dryclean-U.S.A. of California, Inc.* (1992) 11 Cal.App.4th 1490, 1494 (*Lu*). We find the trial court properly exercised its discretion in finding Grishin has standing to enforce the forum selection clause.

The court in *Bancomer* identified three facts, at least one of which a nonsignatory must establish in order to show he is closely related to the contractual relationship: "(1) [the nonsignatory] agreed to be bound by the terms of the purchase agreement, (2) the contracting parties intended the [nonsignatory] to benefit from the purchase agreement, or (3) there was sufficient evidence of a defined and intertwining business relationship with a contracting party." (*Bancomer*, *supra*, 44 Cal.App.4th at p. 1461.) In *Lu*, the nonsignatory defendants were closely related to the contractual relationship because they were "alleged to have participated in the fraudulent representations which induced plaintiffs to enter into the Agreement." (*Lu*, *supra*, 11 Cal.App.4th at p. 1494.) In *Bugna*, the nonsignatories were closely related to the contractual relationship because they were "the deal makers who negotiated, evaluated and otherwise put together the very . . . transactions that [the plaintiffs] . . . attack[ed]." (*Bugna*, *supra*, 80 Cal.App.4th at p. 235.)

Here, as the trial court noted, almost the entirety of the allegations in the operative complaint revolves around representations by, or conduct of, Grishin. Grishin is the person who told Loskot about his mining dealings in Kazakhstan and solicited Loskot's participation in Minecon LLC. Even though Grishin was not a signatory to the Minecon LLC operating agreement, Loskot alleged he was a managing director of the company. Grishin was Loskot's connection to the entire deal.

Loskot counters that Grishin specifically refused to become a signatory to the operating agreement and should thus be prohibited from seeking the agreement's benefits. Loskot cites no legal authority for this theory, however, and we have found none.

Loskot also contends the operating agreement contains a no third party beneficiary clause stating in pertinent part: "[T]his Agreement is for the sole benefit of the parties hereto (and their respective heirs, executors, administrators, legal representatives, successors and permitted assigns), and nothing herein, express or implied, is intended to or shall confer upon any other Person, including any creditor of the Company, any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason of this Agreement."

This clause does not preclude Grishin from enforcing the forum selection clause, however. Grishin does not seek to enforce it as a third party beneficiary, but as a party closely connected with the operating agreement. As a person closely connected with the contractual relationship, the forum selection clause applies to Grishin. (See *Lu*, *supra*, 11 Cal.App.4th at p. 1494.)  (We need not resolve the question of whether Grishin is or was a third party beneficiary in order to conclude he is legally able to enforce the forum selection clause against Loskot.)

## IV.

GRISHIN IS NOT REQUIRED TO SHOW THAT FLORIDA IS A SUITABLE FORUM

Citing *Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 751 (*Stangvik*), Loskot argues the trial court erred by concluding Grishin did not need to show Florida was a suitable forum to enforce the forum selection clause. Loskot has not shown the trial court abused its discretion.

*Stangvik* dealt with a motion based on forum non conveniens, "an equitable doctrine invoking the discretionary power of a court to decline to exercise the jurisdiction it has over a transitory cause of action when it believes that the action may be more appropriately and justly tried elsewhere." (*Stangvik, supra*, 54 Cal.3d. at p. 751.) "In determining whether to grant a motion based on forum non conveniens, a court must first determine whether the alternate forum is a 'suitable' place for trial." (*Ibid*.)

The trial court correctly concluded that, since Grishin's and Evenson's motions were based on a contractual forum selection clause, a different analysis applies. The court cited *Richtek USA, Inc. v. uPI Semiconductor Corp.* (2015) 242 Cal.App.4th 651, which states as follows: "'In California, the procedure for enforcing a forum selection clause is a motion to stay or dismiss for forum non conveniens . . . , but a motion based on a forum selection clause is a special type of forum non conveniens motion. The factors that apply generally to a forum non conveniens motion do not control in a case involving a mandatory forum selection clause.' [Citation.] When a case involves a mandatory forum selection clause, it will usually be given effect unless it is unfair or unreasonable. [Citation.] Moreover, a court will normally reject any claims that the chosen forum is unfair or inconvenient. [Citation.] Also, '[a] court will usually honor a mandatory forum selection clause without extensive analysis of factors relating to convenience.'

11

[Citation.]" (*Id.* at 661.) Thus, the only way Loskot could avoid enforcement of the forum selection clause was by showing it would be unfair or unreasonable—a showing that he did not attempt to make. The suitability of the selected forum is not a part of this analysis.

V.

THE FORUM SELECTION CLAUSE COVERS THE CLAIMS
ASSERTED IN LOSKOT'S COMPLAINT

Loskot's final argument is that the conduct alleged in the lawsuit occurred before the operating agreement's execution, and that the forum selection clause therefore cannot apply. The trial court concluded that the forum selection clause is broad enough to cover the claims asserted in this action, and we agree.

Loskot contends the lawsuit centers on defendants' alleged "theft" of his $400,000 investment in Minecon LLC to fund other companies. Therefore, he argues Minecon LLC's operating agreement is unrelated to his allegations.

Not so. The forum selection clause states unequivocally that it applies to "any action, litigation or proceeding of any kind whatsoever against any other party in any way arising from or relating to this Agreement . . . and all matters arising out of or relating to this Agreement, including, but not limited to, contract, equity, tort, fraud and statutory claims." Loskot alleges that he was persuaded to sign the Minecon LLC operating agreement as part of what he believed to be a $400,000 investment in the company, in exchange for which he thought he would receive 45 percent of the company's shares. Therefore, the operating agreement was part of the overall scheme by which Loskot claims to have been defrauded.

12

The trial court correctly granted Grishin's and Evenson's motions.

## DISPOSITION

The order granting Grishin's and Evenson's motions to stay the action is affirmed. Respondents to recover their costs on appeal.


BANCROFT, J.*

WE CONCUR:


GOODING, ACTING P. J.


SCOTT, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.