[No. B089364. Second Dist., Div. Three. Apr. 30, 1996.]

BANCOMER, S. A., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
TERRY REILLY et al., Real Parties in Interest.

## Counsel

Pillsbury Madison & Sutro, Charles E. Patterson, Kevin M. Fong and Robert A. Gutkin for Petitioner.

No appearance for Respondent.

Hardy L. Thomas for Real Parties in Interest.

## Opinion

KITCHING, J.—In this action for mandamus relief, we consider whether a bank, a nonsignatory to a purchase agreement between a resort developer and individual purchasers of leasehold interests in the property, is so "closely related to the contractual relationship" between the parties that it can enforce a contractual forum selection clause requiring litigation of disputes in Mexico. We decide it is not.

The forum selection clause appears in an agreement for use and development of land (purchase agreement) at the Baja Beach & Tennis Club (BB & TC) in Mexico, and provides: "Any conflict which may arise regarding the interpretation or fulfillment of this contract, shall be submitted expressly to the courts of the City of Ensenada, B.C."

The action arises out of the purchase of leasehold interests at BB & TC that became invalid after a Mexican court determined that the developer who sold the interests did not have title to the property.[1] Individual purchasers brought an action in California for fraud against Bancomer, S. A. (Bancomer), the bank designated in the purchase agreement to establish a trust

---

[1] The plaintiffs and real parties in interest are Terry Reilly, Sharon McCall, Horst Doerzapf, Kenneth W. Hoff, Donald E. Moore, Carol E. Moore, Brian Palmer, Hilary Palmer, Carmen Pascua, Romauldo A. Pascua, Herbert Stein, Rita Stein, Jody Vanda, and Jorge Von Son. They purchased leasehold interests and memberships in the "north side" and "south side" of

through which the interests would be purchased. Bancomer moved for dismissal on grounds the contractual forum selection clause required "any" conflicts arising out of the agreement to be litigated in Mexico. The motion was denied and the bank seeks a writ of mandate directing the superior court to enforce the clause.

We find Bancomer unable to enforce the forum selection clause because the bank is neither a third party beneficiary to the purchase agreement, nor so "closely related to the contractual transactional transaction" to claim a benefit from the clause. We further find the claims against Bancomer for fraudulent inducement are beyond the scope of the forum selection clause. The trial court did not abuse its discretion in denying Bancomer's motion to dismiss. The petition is denied.

### FACTUAL AND PROCEDURAL BACKGROUND

In or about 1986, Mexican developer Carlos Teran (Teran), Grupo Koster, S.A. de C.V. (Koster), and CETA, Ltd. (CETA), allegedly acquired the rights to develop land and construct a resort in Baja California, Mexico. Koster entered into an agreement with certain Mexican citizens, the Ejido, for use and development of the land for a period of 30 years.[2] Koster and CETA then sold individual purchasers 30-year leasehold interests (or participation rights) in the property and/or memberships in the BB & TC.

From 1988 to 1992, the real parties in interest (referred to collectively as Reilly) purchased leasehold interests and/or memberships in the resort. The terms of the leaseholds were contained in the membership agreement with CETA and the purchase agreement with Koster. The purchase agreement provided, in relevant part, that the interests would be issued under a trust with Bancomer.[3] Bancomer was not a party to the agreement. Reilly executed a promissory note in favor of CETA for the balance due on the

the resort, along with club memberships. *This writ proceeding only involves the superior court's ruling as to the contractual forum selection clause in the agreements of those parties who purchased interests in property on the "north side" of the resort.* Of the plaintiffs/real parties in interest, only Terry Reilly, Sharon McCall, Herbert and Rita Stein, and Donald and Carol Moore purchased property interests on the "north side" and are involved in this writ proceeding.

[2]The Ejido are native Mexican citizens who own land subject to grants from the Mexican government. The Ejido have the authority, subject to approval from the Mexican government, to grant other parties the right to use their land for certain purposes for a limited duration of time.

[3]Mexico prohibits ownership of certain lands by "foreign" interests, but permits the leasing of properties for use and enjoyment. Long-term leases of land which exceed 10 years can only be acquired by "foreigners" through a Mexican "bank trust." Where there is a lease subject to a trust, the landowner (lessor) is the trustor, the bank is the trustee and the leasehold purchaser

purchase and membership agreements, and sent payments to an address in California. The notes were subsequently assigned to Bancomer.

The two agreements contained separate forum selection clauses. The membership agreement provided: "If this application is accepted by CETA, all provisions of the agreement formed thereby shall be governed by the laws of the Cayman Islands, and any action arising from or connected with this Application shall be brought in the courts of said jurisdiction at the election of CETA or the courts of the applicable jurisdiction where applicant resides. . . ." The purchase agreement provided: *"Any conflict which may arise regarding the interpretation or fulfillment of this contract, shall be submitted expressly to the courts of the City of Ensenada, B.C."* (Italics added.) The forum selection clause in the purchase agreement is the subject of this writ petition.

At the time Reilly purchased the leasehold interest, and unknown to her until 1993, litigation ensued in Mexico between the Ejido and other Mexican citizens over ownership rights to the resort property. This dispute affected the legitimacy of the underlying agreement between Koster and the Ejido, and the validity of the leasehold interests.[4] The bank trust was either not established or was ineffective to protect Reilly's investment. Bancomer, however, continued to collect on the notes.

Reilly filed a first amended complaint in Los Angeles County Superior Court against Bancomer alleging causes of action for, inter alia, constructive fraud and intentional and negligent misrepresentation. The gravamen of the action was that Bancomer, with knowledge of the title litigation in Mexico, misrepresented the validity of the leasehold interests and induced Reilly to enter into the purchase agreement. The complaint did not name either Koster

---

is the beneficiary of the trust. The bank, therefore, holds and guarantees the purchaser's interest in the property and issues these leasehold interest or participation rights.

The membership agreement provided, in relevant part: "A. CETA, LTD., a Cayman Islands, B.W.I. corporation ('CETA'), is the owner of 'C' membership . . . in the Baja Beach and Tennis Club, a California nonprofit mutual benefit corporation ('The Club'). The Club has obtained rights to utilize 154 lots on certain real property located in Punta Banda, Ensenada, Baja California, Mexico (the 'Property'). Such property and lots rights ensuing to members are guaranteed to the Members through the establishment of a Bank Trust with BANCOMER, S.N.C. a Mexican Credit and Trust Institution. . . ."

The purchase agreement provided, in relevant part: "VII. That for the purposes of a best legal and administrative regulation, its representative is in the process of obtaining a trust that will last the same term of this contract. Mentioned trust will be contracted with BANCOMER, S.N.C., and the purposes also will be to issue individual certification to each one of the individual acquirers of rights on mentioned lots."

[4] A Mexican court later decided the issue adversely to the interests of plaintiffs/real parties in interest and in favor of third parties, who were declared legal owners of the land. Therefore the long-term leaseholds and the memberships are void under Mexican law.

or CETA as parties. Bancomer's answer asserted, among other affirmative defenses, that "[p]laintiffs have waived any right to assert such claims against Bancomer in the United States, by agreeing to a forum selection clause that provides that Mexican law governs all disputes and Ensenada, Mexico is the proper place to resolve any such disputes."

Bancomer moved to dismiss the complaint on the basis of the forum selection clause and Code of Civil Procedure section 410.30, subdivision (a), which states: "When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just."[5] Bancomer asserted that Reilly's claims against it arose out of the purchase agreement, and were encompassed within the terms of the forum selection clause which provided that Mexican courts were to resolve "any" conflict. In opposition, Reilly argued that Bancomer, which did not sign the purchase agreement, had no standing to claim the benefit of the forum selection clause. Reilly also argued that enforcement would be unreasonable and a violation of public policy.

The superior court denied Bancomer's motion to dismiss as to the holders of property interests on the "north side" of the resort.[6] The court found the forum selection clause inapplicable to the fraud allegations asserted against Bancomer, and stated the claims "[did] not represent 'a conflict which may arise regarding the interpretation or fulfillment of the contract' by the seller. Plaintiffs seek to hold defendant Bancomer liable for its own conduct, not that of the seller." The court also found that Bancomer, as a nonparty to the agreement, was not "closely related to the contractual relationship" between Koster and Reilly so as to come within the scope of the forum selection clause.

Bancomer filed a petition for writ of mandate. We issued an alternative writ directing the respondent court either to grant Bancomer's motion to dismiss or to show cause why it should not be ordered to do so. Respondent court did not comply with our alternative writ. After a series of continuances requested by all parties, we heard oral argument.

---

[5]Bancomer also asserted that four plaintiffs were already litigating the issue of Koster's fraudulent actions in Mexico and that similar claims against Bancomer should be litigated in that forum. However, Koster initially filed lawsuits in Mexico against Terry Reilly, Sharon McCall, Herbert Stein and Rita Stein, to collect on the promissory notes. Since Mexican law prohibited cross-claims based on "new facts and causes," the plaintiffs hired an attorney in Mexico to file a separate action as a defensive response to Koster's allegations.

[6]The trial court heard argument on September 23, 1994, and October 28, 1994. On October 28, 1994, the court granted Bancomer's motion as to non-California residents, and denied the motion as to holders of property interests on the "south" side.

CONTENTS

Bancomer contends the trial court abused its discretion in denying the motion to dismiss because the forum selection clause in the purchase agreement designates Mexico as the proper forum for litigation of claims arising out of the agreement.

DISCUSSION

1. *Standard of Review*

■ A forum selection clause is valid in the absence of the resisting party meeting a heavy burden of proving enforcement of the clause would be unreasonable under the circumstances of the case. (*Smith, Valentino & Smith, Inc.* v. *Superior Court* (1976) 17 Cal.3d 491, 496 [131 Cal.Rptr. 374, 551 P.2d 1206]; *Lu* v. *Dryclean-U.S.A. of California, Inc.* (1992) 11 Cal.App.4th 1490, 1493 [14 Cal.Rptr.2d 906].) ■ "We review a trial court's decision to enforce [or refuse to enforce] a forum selection clause for an abuse of discretion." (11 Cal.App.4th at p. 1493; *Furda* v. *Superior Court* (1984) 161 Cal.App.3d 418, 424 [207 Cal.Rptr. 646].) "The standard of abuse of discretion applies to a broad range of decisions . . . . [¶] . . . [T]he standard presumes deference to the trial court. Such deference makes sense where the issue usually involves primarily factual disputes. In its emphasis on deference, the abuse of discretion standard is similar to the substantial evidence rule." (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1065 [24 Cal.Rptr.2d 654].) We note "[t]he sufficiency of the evidence standard usually is applied to test evidence supporting a judgment. Rulings other than judgments ordinarily are reviewed for abuse of discretion." (*Id.* at p. 1066.) "In *Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 566 . . . , our Supreme Court declared that '. . . a reviewing court should not disturb the exercise of a trial court's discretion unless it appears that there has been a miscarriage of justice.' " (*Ibid.*)[7]

We therefore consider the superior court's ruling in light of Reilly's burden to show that enforcement of the clause would be unreasonable.

[7]We note the Third District in *Cal-State Business Products & Services, Inc.* v. *Ricoh* (1993) 12 Cal.App.4th 1666, 1680-1681 [16 Cal.Rptr.2d 417] declined to follow the abuse of discretion standard and determined that review of a contractual forum selection clause was subject to a substantial evidence standard of review. The court stated, in relevant part: ". . . [I]n a contractual forum non conveniens motion, the trial court must determine if there is sufficient evidence to satisfy the requirements for invalidating a binding contract. If the trial court finds there are facts present which satisfy these criteria, it *must* act in a particular way; there is no discretion involved. The reviewing court is thus involved in determining the quantum of evidence adduced, not the manner in which factors were applied. [Citations.]" (*Id.* at p. 1681.) While we decline to accept this approach, we note our disposition in this case would be the same under either standard.

## 2. *Enforcement of the Forum Selection Clause Would Be Unreasonable Under the Circumstances of This Case.*

Reilly advances three arguments in opposition to enforcement of the forum selection clause. First, she asserts Bancomer was not a party to the purchase agreement and, therefore, unable to claim the benefits of the clause under theories it was either a third party beneficiary or "closely related to the contractual relationship" between the parties to the agreement. (*Lu* v. *Dry-clean-U.S.A. of California, Inc., supra,* 11 Cal.App.4th at p. 1494.) Second, she contends the causes of action alleged against Bancomer did not relate to the "interpretation or fulfillment" of the purchase agreement, but were fraud tort claims independent of the agreement. (See *Manetti-Farrow, Inc.* v. *Gucci America, Inc.* (9th Cir. 1988) 858 F.2d 509, 514.) Finally, Reilly argues the designated litigation forum arbitrarily depended on the location of an individual's property interest at the resort and would result in conflicting rulings.

### a. *Bancomer Is Not a Third Party Beneficiary to the Agreement.*

■ "Civil Code section 1559 provides: 'A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it.' A third party may qualify as a beneficiary under a contract where the contracting parties must have intended to benefit that third party and such intent appears on the terms of the contract. [Citation.] However, it is well settled that Civil Code section 1559 excludes enforcement of a contract by persons who are only incidentally or remotely benefited by it. [Citations.] ' "A third party should not be permitted to enforce covenants made not for his benefit, but rather for others. He is not a contracting party; his right to performance is predicated on the contracting parties' intent to benefit him. . . ." ' [Citations.] . . . [¶] The fact that the third party is only incidentally named in the contract or that the contract, if carried out to its terms, would inure to the third party's benefit is insufficient to entitle him or her to demand enforcement. [Citation.] Whether a third party is an intended beneficiary or merely an incidental beneficiary to the contract involves construction of the parties' intent, gleaned from reading the contract as a whole in light of the circumstances under which it was entered. [Citation.]" (*Jones* v. *Aetna Casualty & Surety Co.* (1994) 26 Cal.App.4th 1717, 1724-1725 [33 Cal.Rptr.2d 291]; see also *Sheppard* v. *Banner Food Products* (1947) 78 Cal.App.2d 808, 812 [178 P.2d 455].) The burden is on Bancomer "to prove that the performance [it] seeks was actually promised." (*Garcia* v. *Truck Ins. Exchange* (1984) 36 Cal.3d 426, 436 [204 Cal.Rptr. 435, 682 P.2d 1100].)

■ It is apparent from the purchase agreement, which recited the rights and responsibilities of and between Koster and Reilly, that Bancomer was

not an intended beneficiary. Incident to the terms of the purchase agreement, Bancomer was named as the trustee. That is not enough. A review of the purchase agreement and the circumstances under which it was negotiated and signed fails to demonstrate that Koster and Reilly intended Bancomer to benefit from their transaction. Bancomer has failed to meet its burden and prove otherwise. We agree with the superior court's determination that "there is no evidence that the plaintiffs, against whom the consent clause is sought to be enforced by Bancomer, agreed to its relationship with Bancomer or any other non-party being included in the clause." Bancomer has no standing as a third party beneficiary to enforce the forum selection clause.

### b. Bancomer Is Not "Closely Related to the Contractual Relationship" Between Koster and Reilly.

■ Bancomer is not entitled to enforce the forum selection clause on the ground the bank was "closely related to the contractual relationship" between Koster and Reilly. In reaching this conclusion, we consider the limited case law in this area.

In *Lu* v. *Dryclean-U.S.A. of California, Inc., supra,* Eric and Yen Lu entered into a franchise agreement with Dryclean-U.S.A. of California, Inc. (Dryclean-California) that contained a forum selection clause which read: " '[a]ny and all litigation that may arise as a result of this Agreement shall be litigated in Dade County, Florida.' The corporate parent of Dryclean California, Dryclean-U.S.A. Franchise Company (Dryclean Franchise), maintains its principal place of business in Miami, Florida, as does its corporate parent, Dryclean-U.S.A., Inc. (Dryclean U.S.A.)." (11 Cal.App.4th at p. 1492.) Lu subsequently filed an action for damages and rescission against Dryclean-California, Dryclean Franchise, and Dryclean U.S.A. The court granted defendants' motion to dismiss based on the forum selection clause. (*Ibid.*) On appeal, Lu argued that ". . . enforcement of the forum selection clause would be unreasonable because two of the defendants, Dryclean Franchise and Dryclean U.S.A., did not sign the Agreement containing the clause." (*Id.* at pp. 1493-1494.) The appellate court disagreed and determined that in this case, ". . . the alleged conduct of Dryclean Franchise and Dryclean U.S.A. is closely related to the contractual relationship. They are alleged to have participated in the fraudulent representations which induced plaintiffs to enter into the Agreement. Indeed, plaintiffs go so far as to allege Dryclean Franchise and Dryclean U.S.A. are the 'alter ego' of Dryclean California, which did sign the Agreement containing the forum selection clause. Under these circumstances, the fact that Dryclean Franchise and Dryclean U.S.A. did not sign the Agreement does not render the forum selection clause unenforceable. [Citations.] To hold otherwise would be to

permit a plaintiff to sidestep a valid forum selection clause simply by naming a closely related party who did not sign the clause as a defendant." (*Id.* at p. 1494, fn. omitted.)

In *Manetti-Farrow, Inc.* v. *Gucci America, Inc. supra,* 858 F.2d 509, a case on which Bancomer relies, "Manetti-Farrow entered an exclusive dealership contract with Gucci Parfums [in 1979]. The contract included a forum selection clause which designated Florence, Italy as the forum for resolution of any controversy 'regarding interpretation or fulfillment' of the contract." (*Id.* at p. 510.) "Gucci America, the owner of the American rights to the Gucci trademark, was not a party to the exclusive dealership contract, but entered a separate Consent and Ratification Agreement, consenting to the terms of the contract." (*Id.* at p. 511.) In 1986, Gucci Parfums terminated the dealership agreement and sued Manetti-Farrow in Italy for breach of contract. (*Ibid.*) Manetti-Farrow then sued Guccio Gucci, Gucci America, Gucci Parfums, Dr. Maurizio Gucci, Domenico De Sole and Dr. Giovanni Pilone in federal court in California alleging various tort claims. The court granted defendants' motion to dismiss. (*Ibid.*) Manetti-Farrow appealed and argued that ". . . the forum selection clause can only apply to Gucci Parfums, which was the only defendant to sign the contract." (*Id.* at p. 514, fn. 5.) The court disagreed and noted " 'a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.' [Citations.] We agree with the district court that the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants." (*Ibid.*)

Neither *Lu* and *Manetti-Farrow* provides a basis for Bancomer's enforcement of the forum selection clause. In both matters, the existence of a "close relationship" has a basis not present in this appeal. In *Lu*, the nonsignatory defendants were all part of a corporate business structure involved in franchising dry-cleaning establishments, and all the defendants were alleged to have participated in tortuous conduct. In our case, Bancomer was an independent financial conduit used by the development company for the limited purpose of establishing a trust through which the individual leasehold interests could be purchased. The purchase agreement identified Bancomer as the trustee. There is no evidence of any intertwining business arrangement between Koster and Bancomer, or Reilly and Bancomer. The bank, it is alleged, acted alone. There were no assertions of fraudulent conduct by any other person or entity. In *Manetti-Farrow*, Gucci America, Inc., expressly consented to be bound by the terms of the dealership agreement when it signed the consent and ratification agreement. In this appeal, we agree with the superior court's conclusion that "there is no evidence that the plaintiffs, against whom the consent clause is sought to be enforced by

Bancomer, agreed to its relationship with Bancomer or any other nonparty being included in the clause." If the "close relationship" Bancomer asserts is based on the premise it is a third party beneficiary of the purchase agreement, we have already determined that argument is without merit.

For Bancomer to demonstrate that it was "so closely related to the contractual relationship" that it is entitled to enforce the forum selection clause, it must show by specific conduct or express agreement that (1) it agreed to be bound by the terms of the purchase agreement, (2) the contracting parties intended the bank to benefit from the purchase agreement, or (3) there was sufficient evidence of a defined and intertwining business relationship with a contracting party. Bancomer failed to prove, under any of these bases, that it had the required contractual relationship to enforce the forum selection clause.

 c. *The Allegations of Fraudulent Conduct Asserted Against Bancomer Do Not Relate to the "Interpretation or Fulfillment" of the Purchase Agreement.*

■ Even were we to assume arguendo that Bancomer had standing to enforce the forum selection clause, the alleged tort causes of action do not fall within the scope of the clause. The relevant language of the clause provides that "[a]ny conflict which may arise regarding the interpretation or fulfillment of this contract" shall be decided in a Mexican court.

"We first note that forum selection clauses can be equally applicable to contractual and tort causes of action. [Citations.] Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract. [Citations.]" (*Manetti-Farrow, Inc.* v. *Gucci America, Inc., supra*, 858 F.2d at p. 514.) We therefore consider whether Reilly's claims required interpretation of the purchase agreement.

Reilly's complaint asserts that Bancomer fraudulently induced her to enter into a written agreement to purchase a leasehold interest in BB & TC. The alleged offending conduct preceded formation of the purchase agreement. Bancomer is being held directly liable for its own conduct, not derivatively liable for that of Koster, the developer. The claims do not concern Bancomer's service as a trustee under the purchase agreement, or any of the bank's postpurchase performance. The claims do not relate to the rights and responsibilities accorded Reilly and Koster under the purchase agreement. Adjudication of Reilly's fraudulent inducement claims do not necessitate consideration of the parties' compliance with the purchase agreement. Since the terms of the purchase agreement, and their interpretation, are irrelevant to

the claims alleged by Reilly, we conclude the tort causes of action do not relate to "any conflicts" "regarding the interpretation or fulfillment" of the agreement. Accordingly, Reilly's claims do not fall within the scope of the forum selection clause. (Cf. *Manetti-Farrow, Inc.* v. *Gucci America, Inc.*, *supra*, 858 F.2d at p.514.)

### d. *Enforcement of the Forum Selection Clause Would Result in Arbitrary and Conflicting Rulings.*

As explained, the purchase agreement for the leasehold interests on the "north" side of the resort property contained a forum selection clause that compelled litigation in Mexico. However, those individuals who purchased leasehold interests on the "south" side of the resort property had the option to litigate disputes in either the Cayman Islands or the jurisdiction of their residence, to wit, California. Bancomer is designated as trustee on all of these purchase agreements. Bancomer, by its petition, seeks only to enforce the forum selection clause for the "north" side properties. The relief sought by the bank is arbitrary and inconsistent.

Some of the purchasers bought interests on both the "north" and "south" side of the resort. It would be unreasonable and illogical to have an individual involved in simultaneous litigation in two separate forums, over the same issue, because of nothing more than the location of the leasehold interest within the same resort area. This simultaneous litigation could result in conflicting rulings. Furthermore, Bancomer could also find itself litigating in two separate forums because owners of the "south" side leasehold interests could choose to resolve the resolution of disputes in California. This outcome violates principles of judicial economy. Additionally, we agree with the superior court's conclusion that "[b]ecause Bancomer's role and relationship to all the plaintiffs' purchases of the condominiums and the sellers of the condominiums is the same, namely, that of a trustee, it should reasonably litigate all the claims against it in the same forum."

### 3. *Conclusion*

We conclude that under the facts of this case, Reilly met her burden of proving that enforcement of the contractual forum selection clause would be unreasonable. Bancomer had no standing to claim any benefits from the clause. The claims against Bancomer for fraudulent inducement were beyond the scope of the clause. The trial court acted within its discretion in refusing to enforce the forum selection clause.

## DISPOSITION

The petition for writ of mandate is denied. The alternative writ is discharged.

Klein, P. J., and Croskey, J., concurred.