Filed 1/10/23 Campuzano v. Contreras CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| EDWARDO CAMPUZANO et al.,<br><br>    Plaintiffs, Cross-defendants and Respondents,<br><br>        v.<br><br>MARIANA CONTRERAS et al.,<br><br>    Defendants, Cross-complainants and Appellants. | G059700<br><br>(Super. Ct. No. 30-2020-01128251)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Ronald Lawrence Bauer, Judge. Affirmed.

Law Offices of Adams-Urbinati and Kristine Adams-Urbinati for Defendants, Cross-complainants and Appellants.

Straggas Law Group, George D. Straggas and Katharine S. Smith for Plaintiffs, Cross-defendants and Respondents.

\*        \*        \*

This is an appeal from an order denying a motion to compel arbitration brought by defendants, cross-complainants, and appellants Mariana Contreras, Norma Contreras,[1] and Virginia Rubio (collectively appellants), who were parties to breach of contract litigation related to the purchase of their restaurant by plaintiffs, cross-defendants, and respondents Taco Maya, LLC (Taco Maya), Eduardo Campuzano, and Sergio Salinas (collectively respondents). A letter of intent to purchase the restaurant was signed only by Mariana and Campuzano, and accordingly, the trial court determined an arbitration clause was unenforceable against the other respondents.

On appeal, appellants contend Salinas and Taco Maya should be considered "adoptive" signatories to the arbitration agreement or the doctrines of equitable estoppel and third party beneficiary should apply. Alternatively, they claim the trial court abused its discretion by not ordering Campuzano alone to arbitration. We find that appellants' arguments lack merit and the trial court did not err by denying their petition to compel arbitration. The order is affirmed.

I

FACTS

In July 2019, Mariana and Norma listed their small taco restaurant for sale with broker Rafael Garcia. The restaurant, named Tacos Los Altos, was located in Anaheim, and Mariana and Norma each owned 50 percent.

The parties offer quite different versions of preliminary events, including facts related to who attended early meetings and what was said at those meetings. For example, the parties differ as to Rubio's involvement – Campuzano asserted Rubio "acted as the head of operations" for the restaurant, while Mariana stated Salinas never spoke to Rubio. Campuzano also stated Salinas was present to translate for him at

---

[1] Due to their common surname, subsequent references to Mariana Contreras and Norma Contreras will use their first names to avoid confusion.

2

meetings and that he did not speak and understand English with ease, while Mariana claimed that she and her sister were bilingual, that all early meetings occurred in Spanish, and Campuzano never indicated that he needed a translator or interpreter.

The parties do seem to agree that early meetings took place without Garcia, and on July 10, there was a meeting where either Salinas or Campuzano gave Mariana a $5,000 deposit, and she provided a written receipt. Thereafter, Campuzano signed a letter of intent to purchase the restaurant for $65,000. The letter of intent used a form agreement with the specific details entered on blank lines. Campuzano was the only person listed as buyer, with the language "Eduardo Campuzano or assignees." "Mariana Contreras" was listed as the seller.

The letter of intent, which is two pages, includes sections on contingencies, escrow instructions, and the arbitration clause at issue in this case. In the contingency section, a provision stated: "AFTER DUE DILIGENCE is completed to the satisfaction of both parties, this letter of intent shall become a Purchase Agreement with terms set forth. Escrow shall be opened within 2 Business days of completed due diligence . . . for the purpose of completing this transaction."

The arbitration clause reads: "Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration in accordance with rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators shall be final and binding. In any action or proceeding arising out of this agreement, the prevailing party shall be entitled to actual attorney's fees and costs."

On July 22, with the help of Garcia (who was representing both parties subject to an agency disclosure), Campuzano formed Taco Maya as a limited liability company. Salinas was listed as "organizer" in the articles of organization. Campuzano was listed as the agent for service of process, and the management structure stated "more than one manager," although Campuzano was listed as the only manager elsewhere in the

3

filing. The opposition to the motion to compel arbitration later asserted that Salinas was "a member/manager" of Taco Maya.

The escrow instructions, dated August 14, listed Mariana and Norma as the sellers and Taco Maya as the buyer. The escrow instructions appended to appellants' cross-complaint are unsigned. An escrow document allocating the purchase price, dated October 14, lists Taco Maya as the buyer and Campuzano as "manager," as did amended escrow instructions dated October 23 and October 24. Again, all of these documents, included as exhibits to the cross-complaint, are unsigned, with the sole exception of the letter of intent. After the LLC was formed, the assignment of the lease for the restaurant was placed in Campuzano's name as an individual.

After Campuzano signed the letter of intent in July, various disputes arose, but we need not belabor them here. Mariana and Norma allowed Campuzano to take possession of the restaurant before the sale was finalized and before the liquor license was transferred, apparently due to the landlord's decision to put a time limit on the remodel Campuzano intended to complete. Proposed agreements were exchanged, but ultimately not accepted. Campuzano eventually vacated the restaurant premises. According to Campuzano, Mariana and Norma "took money from him, promised to sell him the Restaurant and then kept demanding new terms and more money. After tying up his deposits, they demanded that he pay them the proceeds of all credit card sales from the business and kept asking him to sign more and more documents."

Campuzano, as an individual, brought the instant case against Mariana, Norma, and Rubio in January 2020, seeking relief under various theories. He alleged the contract at issue was the oral one entered into when he provided the $5,000 check. Mariana and Norma filed a cross-complaint against Campuzano and Salinas, both as individuals and as members of Taco Maya, and against Taco Maya. They alleged Campuzano, Salinas, and Taco Maya breached a written contract, specifically referencing a "purchase agreement" (the letter of intent).

4

Appellants thereafter filed a motion to compel arbitration which respondents opposed. Ultimately, the court denied the motion, finding appellants had not proved the existence of an arbitration agreement between them and Salinas or Taco Maya. The court also referenced Code of Civil Procedure section 1281.2, subdivision (c),[2] which gives the court discretion to deny a motion to compel arbitration in certain circumstances. Mariana and Norma appeal.

## II

## DISCUSSION

*A. Standard of Review*

"With respect to the standard of review, '"[t]here is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed."'" (*Holley v. Silverado Senior Living Management, Inc.* (2020) 53 Cal.App.5th 197, 201.)

"[T]he ultimate determination whether to stay or deny arbitration based on the possibility of conflicting rulings on common questions of law or fact is reviewed for an abuse of discretion." (*Daniels v. Sunrise Senior Living, Inc.* (2013) 212 Cal.App.4th 674, 680.)

As applied to this case, the question of whether a third party can be required to arbitrate is a question of law which we review de novo. (*Daniels v. Sunrise Senior Living, Inc., supra*, 212 Cal.App.4th at p. 680.) Any factual determinations made by the trial court are subject to review for substantial evidence. (*Holley v. Silverado Senior Living Management, Inc., supra*, 53 Cal.App.5th at pp. 201-202.) The decision to

---

[2] Subsequent statutory references are to the Code of Civil Procedure unless otherwise indicated. This subdivision is incorrectly identified as subdivision (d) in the record.

5

deny arbitration based on the potential for conflicting rulings is subject to review for abuse of discretion. (*Daniels*, at p. 680.)

## B. Existence of an Arbitration Clause

Section 1281.2 requires a court to order arbitration "if it determines that an agreement to arbitrate . . . exists . . . ." California has a strong public policy in favor of arbitration as an expeditious and cost-effective way of resolving disputes. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.) Even so, parties can only be compelled to arbitrate when they have agreed to do so. (*Westra v. Marcus & Millichap Real Estate Investment Brokerage Co., Inc.* (2005) 129 Cal.App.4th 759, 7630-764.)

"""[W]hen presented with a petition to compel arbitration the trial court's first task is to determine whether the parties have in fact agreed to arbitrate the dispute. [¶] . . ." [Citation.]' [Citations.] 'A party seeking to compel arbitration has the burden of proving the existence of a valid agreement to arbitrate.'" (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 59; see *Lacayo v. Catalina Restaurant Group Inc.* (2019) 38 Cal.App.5th 244, 257.)

On appeal, as mentioned above, we review this issue to determine whether substantial evidence supports the trial court's factual findings. "We view the evidence most favorably to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor. [Citation.] Substantial evidence is evidence of ponderable legal significance, reasonable, credible and of solid value. [Citation.] However, '[s]ubstantial evidence . . . is not synonymous with "any" evidence.' [Citation.] Instead, the evidence must be '"substantial" proof of the essentials which the law requires.'" (*Oregel v. American Isuzu Motors, Inc.* (2001) 90 Cal.App.4th 1094, 1100.) If the record contains such evidence, we will affirm the trial court's decision even if conflicting evidence exists. (*Ibid.*)

6

Appellants' opening brief states that respondents opposed arbitration for Salinas and Taco Maya by raising the single *defense* that they were not signatories to the letter of intent. But this turns the burden of proof on the trial court in its head – it is up to appellants, at the outset, to prove an agreement existed. (*Avery v. Integrated Healthcare Holdings, Inc.*, *supra*, 218 Cal.App.4th at p. 59.) The burden did not shift to respondents to offer a defense until appellants did so.

The trial court determined that an arbitration agreement existed between Campuzano and Mariana.[3] Respondents did not file a cross-appeal on this issue, so we therefore begin our analysis from that point. There was an arbitration agreement between Campuzano and Mariana as to the letter of intent, but was there one between appellants on the one hand and Taco Maya and/or Salinas on the other hand?

Appellants contend the letter of intent is not the only document that governs the purchase, and therefore Campuzano's signature "is a distraction." It may not be the only document that governed the purchase, but it is the only document with an arbitration provision, and therefore it is central to this dispute. We therefore begin with the letter of intent itself. As noted above, it is a standard two-page form document. It does not include an integration clause, nor does it purport to incorporate later documents. The last paragraph, before the signatures, the document reads: "The above offer is hereby accepted by Seller after DUE DILIGENCE."

Thus, the scope of the letter of intent is limited. The court had more than sufficient evidence to find, based on the evidence before it, that the letter of intent never became a purchase agreement. That evidence includes a pile of unsigned escrow

---

[3] Appellants assert, without a record citation or legal support, that "Mariana's signature on the [letter of intent] was made for both of them." This is not supported by substantial evidence, nor is it altered by the fact that subsequent documents were signed or initialed by both. Ultimately, whether Norma can enforce the arbitration clause is much less important than whether it can be enforced against the third party defendants, but we do not find the court erred in concluding she was not a party to the letter of intent.

documents. Even if the letter of intent did become a purchase agreement, Campuzano's complaint was not based on the letter of intent or any written contract – it was based on the alleged oral contract he entered into with Mariana when he paid the $5,000 deposit. Appellants assert, without legal citation, that the "'oral' contract [argument became] moot when it found that the Letter of Intent existed and was binding." We reject this argument. A written and an oral contract can exist side by side, particularly when the written contract at issue includes no integration clause. As it stands, only appellants brought suit on the letter of intent. They cannot, by merely insisting upon it, negate Campuzano's theory of his own case. The letter of intent applies only to the cross-complaint.

*C. Taco Maya's "Adoption" of the Letter of Intent*

Appellants assert that Taco Maya "adopted" or ratified the letter of intent and is therefore bound by its terms. Appellants cite law stating that it is possible for a later-formed entity to adopt or ratify conduct that occurred before it existed (see, e.g., *02 Dev., LLC v. 607 South Park, LLC* (2008) 159 Cal.App.4th 609), and nobody appears to be arguing otherwise.

But what appellants do not offer is evidence that such adoption or ratification occurred here. The evidence they point to is that "after CAMPUZANO signed the [letter of intent] on July 12, 2019, SALINAS and CAMPUZANO created TACO MAYA LLC on July 22, 2019; and, as manager-members, SALINAS and CAMPUZANO named the restaurant TACO MAYA and thereafter had all documents related to the purchase of the restaurant placed in the name of the LLC, with CAMPUZANO signing all documents as an LLC manager-member." That serves as proof that Campuzano intended for Taco Maya to be the owning and operating entity of the restaurant, but it does not provide evidence sufficient to establish that Taco Maya

8

intended to adopt the only document that matters here, the letter of intent which included the arbitration clause.

Similarly, Corporations Code section 208, subdivision (b), does not apply here. That provision states: "Any contract or conveyance made in the name of a corporation which is authorized or ratified by the board, or is done within the scope of the authority, actual or apparent, conferred by the board or within the agency power of the officer executing it, except as the board's authority is limited by law other than this division, binds the corporation, and the corporation acquires rights thereunder, whether the contract is executed or wholly or in part executory." (Corp. Code, § 208, subd. (b).) The letter of intent is obviously not a "contract . . . made in the name of a corporation which is authorized or ratified by the board," as the entity did not exist at the time. Absent evidence of actual ratification, this provision does not apply.

Appellants also contend: "More acts taken during the executory period include: the escrow process was initiated by diligence triggers in the [letter of intent] and by a deposit of $15,000 made by the LLC; the escrow BUYER was identified as the LLC; SALINAS and CAMPUZANO as manager-members moved into the restaurant and started earning revenue once the escrow began. It cannot be argued that TACO MAYA LLC did not adopt or ratify the PURCHASE CONTRACT (which, necessarily, incorporated all of the [letter of intent] terms)." Actually, it can be so argued. First, it is worth pointing out that while some of these events occurred, appellants do not include any citations to the record in support of this paragraph. Second, they do not provide a compelling argument that including Taco Maya's name on *unsigned* escrow documents should be accorded legal significance. The documents in the record actually signed by Campuzano relating to the sale are signed in his name only, including the letter of intent, agency disclosure, a broker's notice, and a nondisclosure agreement. Third, although possession of the premises was turned over to Campuzano, there is no evidence what this has to do with Taco Maya. Appellants strain to apply agency law to this situation but

9

lack the actual evidence as to why it should apply to the letter of intent and the arbitration clause. Appellants claim: "every act taken by CAMPUZANO and SALINAS concerning the restaurant bound the LLC." This could be true with respect to the *operation* of the restaurant if there was evidence that Taco Maya was operating the restaurant during that time. It does not automatically follow that it applies to a letter of intent (or an arbitration clause) that predates its formation.

Appellants briefly throw several other theories at the wall, hoping one will stick, including that Campuzano's decision not to sue under the letter of intent demonstrates a "secret purpose" which cannot be the basis for a contact reformation. The 1937 case cited in support of this creative theory is not on point and this theory is rejected, as is appellants' brief mention, without development or argument, of Civil Code section 1589.

## D. Liability on and Benefits of the Letter of Intent

Appellants next contend that both Campuzano and Taco Maya are liable on the "contract" (referring to the letter of intent). They assert, again pointing only to the formation of the LLC and unsigned escrow instructions, that "the LLC became the contractual purchaser on the sale of the restaurant, and the money at stake was held in escrow in the name of the LLC[.]" There are no record citations to support the facts underlying this contention.

Next, appellants, citing "basic contract law" assert that the letter of intent "was created and signed with the intent of benefitting the LLC" – which did not yet exist. (Boldfacing & capitalization omitted.) The only real evidence they point to is that the letter of intent was in the name of "Eduardo Campuzano or assignees" – and ask us to assume the contract was assigned to Taco Maya. There is no written assignment in the record, at least that we can find, and appellants do not cite to one. The remainder of their arguments on this point are not supported by record citations and assume facts rather than

10

proving them. Many of the "facts" appellants do rely on are not from admissible evidence but from their cross-complaint. Appellants have simply not met their burden to show that Taco Maya was bound by the letter of intent or the arbitration clause. The trial court's conclusion that the arbitration clause bound only Campuzano was reasonable and did not violate the intent of the parties as expressed by the four corners of the letter of intent. (*Minich v. Allstate Ins. Co.* (2011) 193 Cal.App.4th 477, 485 [mutual intent at the time the contract is formed governs, and such intent is to be inferred solely from the written provisions of the contract when possible].)

Appellants do not offer a separate argument as to Salinas, apparently relying on his status as a member of Taco Maya, even though he was also sued individually. Salinas never signed the letter of intent and he was not listed as a buyer. Accordingly, on the face of the agreement, he cannot be subject to the letter of intent's provisions. We shall consider *post* whether any other doctrine might apply that would be sufficient to deem him bound, but on the face of the agreement, he is not a party to the letter of intent or its arbitration clause.

## E. Appellants' Alternate Theories

Appellants contend that even if the Salinas and Taco Maya were not adoptive signatories to the letter of intent and therefore the arbitration clause, the clause should be enforceable against them under the doctrines of equitable estoppel, as third party beneficiaries, or under principles of agency. Some of these arguments overlap those we have already rejected. Ultimately, trial court disagreed with these contentions, and so do we.

As we noted above, arbitration is a creature of consent. Arbitration agreements "cannot bind nonsignatories, absent a judicial determination that the nonsignatory falls within the limited class of third parties who can be compelled to arbitrate." (*Benaroya v. Willis* (2018) 23 Cal.App.5th 462, 468.) We review the court's

11

findings on this question de novo to the extent it does not rely on conflicting evidence. (*DMS Services, LLC v. Superior Court* (2012) 205 Cal.App.4th 1346, 1352.) "[T]here are six theories by which a nonsignatory may be bound to arbitrate: '(a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing or alter ego; (e) estoppel; and (f) third-party beneficiary.'" (*Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1513.) In their moving papers below, appellants argue that estoppel and third party beneficiary applied. On appeal, appellants now add the theory of agency.

We need not spend the time to determine whether the agency argument should even be considered on appeal, as it is so perfunctory and lacking support in appellants' opening brief that we can readily dispense with it as lacking merit. Appellants cite the law without evidence to support their argument, substituting assertions for facts (and record citations, which are completely missing from this argument). They state: "SALINAS acted as the agent of CAMPUZANO, who is an admitted party to the arbitration agreement. Looking at it from another direction, CAMPUZANO acted as an agent for the LLC when he signed the [letter of intent] with the intent of bringing it with him to the LLC entity." In short, they argue, Salinas acted as Campuzano's agent because they say he did, and Campuzano acted as agent for Taco Maya when he signed with letter of intent with an intent they cannot prove existed at the time. This argument needs no further consideration.

With respect to equitable estoppel as it applies to this case, that doctrine holds that a third party cannot accept the benefit of a contract without the burden. (*NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 81-82.) Thus, if a nonsignatory to a contract accepts some of the benefits to a contract with an arbitration clause, he or she can be compelled to arbitrate. Here, as they did below, appellants assert that Campuzano's claims are "'founded in and intertwined with'" the letter of intent as "'underlying contract obligations'" and therefore "'inherently inseparable.'" They argue: "As the evidence shows, the LLC and SALINAS (along with CAMPUZANO) both

12

enforced and benefited from the contract during escrow." This assertion is offered without explaining what "benefits" occurred or citing to the record in support of this claim. They assert that the "terms set forth in the escrow papers" – which only appear in the record unsigned, "were terms that the LLC followed, and enforced, throughout the course of escrow. Which is to say, the LLC was *directly benefitting* from the PURCHASE CONTRACT until the manager-members of the LLC cancelled the Purchase." Again, all of these assertions are offered without record citations. Appellants simply do not meet their burden to establish that estoppel should apply.

As for the third party beneficiary theory, appellants are correct that when a benefit is conferred on a third party by a contract, that party can be bound by an arbitration provision. (*JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1240; *County of Contra Costa v. Kaiser Foundation Health Plan, Inc.* (1996) 47 Cal.App.4th 237, 242.) But again, they spend too much time reciting case law and too little time applying it to the facts before us. They simply assert, again without record citations, that "there is no doubt SALINAS had a pre-existing relationship with CAMPUZANO, and functioned as an agent for CAMPUZANO, all the way up until he became a manager-member of the LLC that enjoyed all of the benefits of the [letter of intent]/PURCHASE CONTRACT." This is not evidence, but baldfaced assertions unsupported by facts. Salinas's purported agency for Campuzano is a legal conclusion, and it involves more than a preexisting relationship. So does the contention that anyone "enjoyed all the benefits" of a sale that eventually imploded. "'Whether a third party is an intended beneficiary or merely an incidental beneficiary to the contract involves construction of the parties' intent, gleaned from reading the contract as a whole in light of the circumstances under which it was entered.'" (*Bancomer, S.A. v. Superior Court* (1996) 44 Cal.App.4th 1450, 1458.) Appellants had the burden to establish that Taco Maya and Salinas were *intended beneficiaries* under the letter of intent. They never met their burden to do so below, as the trial court pointed out, and they do not do so here.

13

*F. Abuse of Discretion*

Having concluded that the arbitration agreement could only be enforced against Campuzano, the court exercised its discretion under section 1281.2, subdivision (c), to decline to enforce the arbitration agreement. First, we reject appellants' contention that this issue was not sufficiently considered below. The trial court is not, in a law and motion setting, required to set forth a detailed tentative, and it is certainly entitled to change its tentative. (*Horning v. Shilberg* (2005) 130 Cal.App.4th 197, 203.) We will uphold an exercise of discretion if it was proper on any ground.

Further, appellants do not deny they knew that if the court decided the arbitration clause applied only to some parties, that an exercise of discretion would be required as to how to proceed from there. They could have included this issue in their briefing, and their decision not to do so was their own. This issue was also discussed at the hearing on the motion to compel arbitration, and appellants' counsel had the opportunity to be heard at that time. We find no abuse of discretion in the court's handling of this matter, and specifically no unfairness to appellants or lack of due process.

Section 1281.2 requires the court, once it determines an arbitration agreement exists, to send the matter to arbitration unless an exception applies. "'Section 1281.2(c) addresses the peculiar situation that arises when a controversy also affects claims by or against other parties not bound by the arbitration agreement.'" (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 393.) The purpose of this provision is to "'avoid potential inconsistency in outcome as well as duplication of effort.'" (*Ibid.*) This was the court's precise finding in this matter. "If we took [appellants'] modified approach to this . . . and applied the arbitration agreement to just one plaintiff and one defendant, we would surely be left then with other parties that are alleged to be critical to this whole operation left out and subject to the very significant possibility of inconsistent rulings."

14

Appellants argue that the trial court "should have chosen the option of compelling arbitration between the signatories and staying this action, rather than declining to enforce the arbitration agreement at all, based on the strong public policy favoring arbitration." But the entire reason this statutory provision exists is that *despite* the public policy favoring arbitration, there are times where it can do more harm than good, such as when some parties must arbitrate while others litigate the same issues in court. And simply because the court had another option, it does not follow that the option it chose was an abuse of discretion. Appellants have not demonstrated any abuse of discretion, and therefore the trial court's order is affirmed.

## III

## DISPOSITION

The court's order denying the motion to compel arbitration is affirmed. Respondents are entitled to their costs on appeal.

MOORE, J.

WE CONCUR:

O'LEARY, P. J.

GOETHALS, J.

15